May it please the Court, Mr. Ketterman, Your Honor, this case involves a conviction for two counts of abusive sexual contact. The facts of this case, abusive sexual contact through clothing, which is important in this case, because under the statute that the indictment is based on, they have to show an intentional touching through the clothing with intent to satisfy or to abuse or degrade the victim in this case. The facts are that the defendant in this case, Mr. Gallardo, Frank Gallardo, was married to the child's mother. It was a rocking, tumultuous marriage. They lived on a farm in the middle of the Pine Ridge Indian Reservation. One day, well, previous times and on this particular day, this young girl would go with Frank and do the chores. They were feeding with a tractor. She alleged that on one day that she, Frank would let her drive the tractor and she would sit in Frank's lap and she felt something on her behind through the clothing. The next, she testified that after that she didn't want anything to do with Frank anymore. However, like two days later, she then testified that she was playing on the couch in the house laying on the same sofa with Frank and her mother was in the room. Her mother left the and she then felt Frank touch her vaginal area through the clothing. And on that basis, Your Honors, forms the indictment in this case. There are three, I've raised three claims in this case. Number one, that the motion, that the evidence was insufficient to submit this case to the jury. That the forensic interviewer, Brandy Tonkel's testimony should not be allowed. And thirdly of all, that the specific intent instruction was not given in this case. So when you look at the motion for acquittal in this case, it's clear what had to be shown. Intentional touching with intent to gratify. There was no eyewitnesses to this particular, either occasion under either count of the indictment. No simultaneous corroboration by a third party. There were no eyewitnesses. It was just the testimony of this young girl in this case. For what it's worth, this young woman had been, young girl had been, she was like 12 years old. This young girl had been a victim of previously of an assault that resulted in the defendant in that case going to prison, which came out during the trial. That testimony came out during the trial in this case. And so, but there was no, there was no evidence to show that this was either an intentional touching or there was any intent to gratify in this case. The mother told the FBI, which, and an investigator, that her daughter had lied. She wanted the investigation to end and that the child had exaggerated. Another witness, Ms. Swallow, said the mother told her that she was going to make up lies about Frank and about hurting the child. And then, later on, she asked the same witness how she could recant what she had told to the FBI. A witness, Kraft, testified that the mother was, and she knew both Frank and she knew the mother in this case. And she testified that the mother was jealous and accusatory of Frank, but Frank was a caring person. Frank Gallardo had no, there was no, absolutely in the pre-sentence or at any time during the trial, was there any evidence that Frank Gallardo had any history of anything like this in his life. And then there was another person, a witness called Ms. Niswander. She had read some texts that the mother had sent to Frank saying that she was sorry that she had lied and she was going to tell the FBI that she lied and her daughter lied. Counsel, I think there's a possibility here that whether there is sufficient evidence to convict depends on whether Ms. Tonkel's evidence was properly admitted, and I'd like to talk about that. Okay. Let me say this, Your Honor. The trial lawyer had Tonkel's testimony provided as part of the discovery. She moved to exclude it. Then, after she moved to exclude it, the notice was given that they were going to use it. The notice said that they were going to use it just for her, Tonkel, to testify about the characteristics of sexually abused children. Well, then the court indicates that, and there was nothing in this notice about the substantive requirements under 807 or the burden that they had to meet to use this. They used, they presented the testimony of Tonkel in their case in chief as substantive evidence. 807 and under 801, it's not hearsay if it's used to, if your witness has been attacked and you need it to revive or to... My question is, how would the defense have prepared differently for trial had they been given more or better or sufficient notice under 807? 807? Well, they probably could have had, got their own witness. They could have hired their own expert to... What I'm looking for is how was he prejudiced by this? How was he prejudiced? Because number one, he's prejudiced by the fact that the rules were violated. Number one, how can you make a decision and argue that you needed this testimony to revive or to refresh or to bring back up the testimony of the witness when you presented it in your case in chief? And under 801, that's, they cite 801 as one of the reasons for them wanting to use it and that's, you can use that to rebut an express or implied charge that the declarant fabricated or was improperly influenced or had an improper motive or to rehabilitate your witness. This woman, this lady, Brandy Tonkle, she, there was no rehabilitation here in this case. They used her as substantive evidence. And that's not, the cases out of this circuit do not allow that. I mean, this court has written on that before. 807 is to be used rarely in exceptional circumstances. The Gabe and Azur cases that were cited in the briefs stand for the proposition that you can't use it to corroborate your witness. Well, it all depends, right? I mean, what it really says is, first of all, 807 is a catch-all. It's a disfavored rule. It's not to be used except in exceptional circumstances. Second of all, if you're going to rely on 807, there has to be appropriate notice given. Third, if the testimony is offered and it's offered to offer in a prior statement because the child has become unwilling or unable to testify, that you can present that evidence, right? Because that's an exceptional circumstance. Now, when you get a situation here where the child has testified, although maybe not as forcefully as the government wants, and has testified in a manner that may or may not have been as detailed as the government wants, the question then becomes is, are they trying to? 801 is a totally different thing. Because at 801 you're saying you can admit a prior consistent statement in order to establish that a claim of recent fabrication is unfounded, right? And that's really not what happened here, right? So what's happening here is they're saying the evidence is not as detailed, and it's got to be based on unable or unwilling, doesn't it, right? I mean, that's got to be the theory as I see it. So the question becomes is, is there really any evidence in this record that you believe would show that this child victim was in any way unable or unwilling to testify fully? She testified for an hour or so. I mean, they didn't need her testimony, and my brief argued that. You know, Brandy Tonkle's testimony, bold to a core, is not any different than what this victim testified for, testified about. And Tonkle's testimony was just used to embellish this young girl's testimony. So you're looking at a claim that what they used that testimony for was to improperly corroborate the witness's testimony, to bolster the witness's testimony, and to add detail to the testimony, not when the child was unable or unwilling to put that detail in the record, but where the child just didn't give it. Right. Exactly. And there was no, not to get too picky here, Your Honor, but Rule 807 says that you have to have, you have to give notice. You know, it's got to be written notice. You can't just give a written notice that you're going to call a witness for one reason and then, you know, and then put them on to testify for just blatant hearsay. That was not needed in the case. So that's the case on that. I mean, the Penal and Shaw cases that they testify that they cited in support of their position, it's not helpful. In Penal, the victim had recanted, so the court allowed the 807. In Shaw, the social worker who was the first person that the victim testified or reported the thing to was allowed to testify. Here, the mother and the victim talked to three or four investigators before they finally talked to Brandy Tomple. They didn't need her testimony, not at all. Now, the last and really the strongest issue that I believe that I have in this case is the specific intent instruction that was not given in this case. The Castile case out of the Tenth Circuit, again, in the Velarde case out of the Tenth Circuit, they give, they say 2244 contains a specific intent requirement that 2242 and 2243 do not. So they give a specific intent instruction that I asked for, that the trial attorney asked for in this case. Judge Lang in the Central District in U.S. v. Wade or U.S. v. Henry case that's cited, he gives this instruction. I don't know why the judge didn't give the instruction in this case, but when you have the testimony like this where, I mean, this isn't the strongest case in the world for an intentional touching. I think in my argument, in my brief, I said, you know, if this is a federal tort claim case and this is a federal employee and they sued for something like this, I think the court would throw it out in a minute. How would you get around our case? I mean, I get that the Tenth Circuit has said specific intent is part of this crime. How do you get around our case in United States v. Sweden? I know it's old from 1993, but it says basically, unless the words specific intent appear in the statute, it's not necessary to give it. Well, it uses intent twice. Intentional act that was intended to humiliate, abuse, or gratify the sexual desires of another person. Okay. And I think the three assignments that I made, Your Honor, I think are sufficient overwhelmingly to reverse this conviction, and I have nothing further. Thank you. Kelderman, when you're ready. Good morning again, Your Honors. May it please the court and counsel, my name is Eric Kelderman, and I am here to ask the court affirm Frank Gallardo's convictions in this case. Because it was just addressed moments ago, I'm going to talk about the specific intent instruction. The instructions given in this case were specific intent instructions. They were in accordance with this court's precedent from the Espinoza case, Hollow Horn, both of those were cited in my brief. They were consistent with what this court has laid out as the elements of abusive sexual contact. They say that in order to convict, you have to find, the jury that is, has to conclude that the defendant intended to abuse, harass, degrade, or arouse the sexual desire of any person. Three times in the instructions on each of them, I believe, it notes that the defendant has to act with intent. So as you, Judge Erickson, noted a moment ago, the Sweet case says that you don't have to have the word specific intent in there unless the statute says so. These instructions were completely consistent with Eighth Circuit authority. As to the forensic interview and the notice there, the United States was anticipating that this evidence from the forensic interviewer was going to come in, or that the United States was going to seek to put in the evidence from this person as a prior consistent statement by this child. I don't believe that there's any notice requirement under Rule 801D, D1B, for that purpose. When that evidence comes in, it's allowed to be used as substantive evidence when there is a charge of recent fabrication. The recent fabrication, and as laid out, it's Document 85, the United States anticipated cross-examination of the child, that she had made up the allegations. That didn't happen. But what did happen was the victim's mother, she was on the stand, and there was extensive cross-examination of her about making this story up. She's the one that took the child to the forensic interview. She called the FBI. She put the wheels in motion, at least as far as prosecution of the case. There was an allegation of fabrication by her, that she made the whole thing up to get back at the defendant, to attempt to get him in trouble. And so the United States anticipated it was going to go into this evidence. The notice that was given did not say Rule 807, but it did say— Counsel, when was that notice given? It was August 24, 2016. That was the first time the defense already had notice. I believe it was August 19 of 2016, five days earlier, that the defense moved in limine to keep out these statements. So obviously the defense was aware. But the United States said, we are going to try to use this. We intend to use this. And in opposition to the motion in limine, here is what it is. Statements by this child made to the forensic interviewer. We intend to use those. And what did you disclose it would be used for? That was for the purpose of 801D. It was not an 807 notice. Right. So where it becomes difficult and cloudy here is, how do you comply with the 807 notice requirements, which require the particulars to be disclosed when you never intended to use it under 807? Well, the particulars, it said the child's statements to the forensic interviewer. And I guess what I'm getting to next on that point is that at the pretrial conference, I believe it was a number of days before the trial. I can't remember the exact date right now. The forensic interviewer's statements, what the forensic interviewer was going to testify about, were extensively discussed. In the context of the defense trying to keep it out completely until a little bit later. And right around page 20 or 21 of the pretrial conference transcript, the defense talks about wanting to use that forensic interview to cross-examine. I think she was talking about the child at that point. She wanted to use the statements made in that forensic interview for cross-examination. The defense wanted to use these very hearsay statements, or at least statements by the forensic interviewer from that interview. Granted, the notice did not say 807. I looked up and I tried to find authority saying that for what is required under an 807 notice, and there's not anything that specifically says you have to cite that rule. The substance is what's important, Your Honor, and that's what it appears from the case law to be, is that the substance of these statements is the important thing, that the notice is given with regard to what's going to be used here. They were discussed in detail at the pretrial conference. The defense even wanted to use the child's statements to the forensic interviewer and said that the parties have agreed that she could use those and she would have free reign to cross-examine about things the victim told Ms. Tonkel, the forensic interviewer, and that the government would not be able to object on hearsay grounds. Again, my point is the notice... But if you read, and I'm just looking at it, and my recollection of the conversation that starts on page 21 and goes through page 24, isn't the government representing that while we've disclosed an expert witness, we're going to have her disclose expert witness things, and then we're going to have her discuss the demeanor of the child in making the reports and the consistency of that demeanor with what I've seen in other places in my work. And then, of course, then the defense says, well, we want to cross-examine on some other things. Well, until they actually cross-examine it and open the door, I don't know how you get from my expert disclosure, which is what the government's claiming they're doing, to something that's more substantive under, well, whether it's 801 or 807. I mean, there has to be either a claim of fabrication that you're trying to rebut, so you can get under 801, or you've got to have some incomplete testimony or some failure on the part of the child's testimony under 807. And the notice has to be given. That kind of notice frequently happens in the middle of the trial. I mean, you've tried plenty of these cases, and I presided over a bunch of them, and you'll get to the point, we're going to try and use the 807 catch-all exception judge because here's what the witness testified to, and she's just unwilling or unable to recall what she previously testified to to the forensic interview, and we want the forensic interview to testify. And then, when I'm the judge, I look at the defense lawyer. Do you need time to think about that? And they say, yeah, and I send the jury out for the rest of the day. They say, we're going to recess for half a day. You guys come back at 9, have the jury come back at 930. By that time, we'll sort out where we're going with it. But none of that really happened here. I mean, at least it didn't seem to. All due respect, Your Honor, the expert notice for Ms. Tonkel is completely separate from the notice that I'm talking about with regard to these statements. The notice that I'm talking about came in the United States response to the defendant's first motions in limine. It's document 85. Oh, okay. The expert notice had come sometime before that. See, I thought you had made a reference to the transcript at page 21. The transcript, I thought it was page 21, Your Honor, but I believe in the record they're talking about  And there's a daubert discussion there regarding whether she's qualified as an expert. Defense counsel was considering a challenge there. But then the conversation also went into beyond the expertise area. It was about the specific statements that the child had made. And that's what I'm talking about is not only in the United States response to the limine, document 85, but also that conversation at the pretrial conference. The defense was completely on notice about the hearsay statements, about these being a possibility. The defense even talked about wanting to use a number of them herself. The way that it came up during the trial was the United States started asking some questions. Again, really under 801D1. Because the charge of fabrication had come up during Ms. Thunderhawk's cross-examination. So the United States goes into the background and what Ms. Tonkel talked about with child sex abuse victims and what typically is seen in those cases. Then starting to go into the statements. The district court then called a sidebar when defense objected. Called a sidebar and he said at that point, this is an 807 issue. He went into the findings about reliability and about the need, all the different findings that are required under Rule 807 and under PINO. It was not something where it was anticipated to be 807 testimony. It was anticipated to be an 801 testimony situation. So the judge ruled that it was admissible and the trial proceeded. Ms. Tonkel did clarify some things. She did add some detail. The child did have difficulty and under PINO, I understand that in that case, the victim had recanted. But under PINO, it talks about the exigency. I'm sorry, that it's used in exceptional circumstances. Exceptional circumstances occur when a child sex abuse victim relates details to an adult. That's page 893 of the PINO case. What we have here was an eight-year-old. She was ten years old at the time of trial. She was eight years, nine months old at the time when this happened to her. She had, by my count, I believe there were nine times during her testimony where she sat and was unable to respond. She did provide some information. She did say, made comments about the defendant's, I believe it was his private, touching her bottom through his pants. And then in the house that his hand touched her middle. Ms. Tonkel explained that those are terms commonly used by children that age. And so all of the factors under Rule 807B were met. The notice was given. The notice wasn't given in the form of the words 807 or the number 807. But the substance of the interviews was noticed to the defendant. It was discussed extensively. The testimony was appropriately used and it came in just as it should have. Was the judge the first person to raise the question of its admissibility under 807? I believe so, Your Honor. I was looking through the record and I don't recall 807 coming up until that point in the trial. Again, I believe the United States, by all appearances, appeared that it was going to offer it under 801D. And so that was the anticipation. The court then made the findings. And so the evidence was going to be admissible and the prosecutor proceeded. The Holohorn case says that evidence is sufficient just by a victim. Just a victim's testimony can be sufficient. I believe it's the Holohorn case that says that. Intent is shown by the sexual nature, by what happened. The defendant's actions themselves, that does come from the Holohorn case. Counsel, going back to what you just said, without the tonkal testimony, is there sufficient evidence here to convict based upon the victim's testimonial? Yes. I'm sorry. Yes, Your Honor. I believe that there is. Just what I was outlining a few moments ago, I believe her testimony, very simply and very succinctly put, was that his middle touched her bottom after he had put her on his lap on the tractor and in the house, his hand rubbed her middle or her private over her clothing. It's right around pages 34 to 37 of the trial transcript. Thank you. Thank you. Mr. Pechota, I believe that you used most, if not all, of your time, but I'll give you a minute for rebuttal if you wish. I'll use that minute to just read one sentence out of the instructions on the specific intent. Here's the instruction the court gave. The government is not required to prove the defendant knew his actions or omissions were unlawful. That's why we need a specific intent instruction in this case. One question. Do you agree that the judge was the first person to interject Rule 807 into this discussion? That's probably the truth. That's true. He also said that he had previously certified Brandy Tonko as an expert, and she testified on examination that this is the first time she testified. So I think the judge is confused as to the witnesses in this case. Thank you.